# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Maximo Zapata | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 880 C.D. 2023 |
| | : | |
| Department of Human Services, | : | |
| Respondent | : | Argued: June 3, 2025 |

BEFORE: HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE MATTHEW S. WOLF, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY JUDGE WOLF        FILED: June 30, 2025

Maximo Zapata (Petitioner) petitions this Court for review of a Final Administrative Action Order (Final Order) by the Department of Human Services' (DHS) Bureau of Hearings and Appeals (BHA), which affirmed an Order by Administrative Law Judge (ALJ) Nafeesah Black affirming the denial of Petitioner's request for Long-Term Care (LTC) Home and Community-Based Services (HCBS).[1] Petitioner, a lawful permanent resident (LPR), argues that ALJ Black

---

[1] The Federal HCBS program was created in 1983 through the addition of Section 1915(c) to the Social Security Act (SSA) (now codified at 42 U.S.C. § 1396n). Certified Record (C.R.) at 44. HCBS allows states to furnish an array of services that assist Medicaid beneficiaries to live in the community and, thus, avoid institutionalization. *Id.* at 44-45. Because Section 1915(c) gives the states flexibility to operate outside the normal rules governing use of federal funds, HCBS programs are often referred to as "waiver programs" or "waivers." *Rehab. & Cmty. Providers Ass'n v. Dep't of Hum. Servs.*, 283 A.3d 260, 262-63 (Pa. 2022).

Since the enactment of Section 1915(c), Pennsylvania has expanded the availability of HCBS through State-funded programs. A notable example is the legislation known as Act 150, Act of December 10, 1986, P.L. 1477, No. 150, *as amended*, 62 P.S. §§ 3051-3058, which this

**(Footnote continued on next page…)**

erroneously applied federal and Pennsylvania statutes in determining that Petitioner was ineligible due to his immigration status, and that DHS's denial of access to the health services requested violates the Americans With Disabilities Act of 1990[2] (ADA) as well as the equal protection guarantees of the United States and Pennsylvania Constitutions.[3] Because Section 441.8 of the Human Services Code[4] entitles Petitioner to the HCBS benefits he seeks, we reverse the Final Order.

## I. Background

Petitioner is a 63-year-old Dominican Republic national and Philadelphia resident who acquired LPR status on November 16, 2021. Certified Record (C.R.) at 17. To treat several health conditions including diabetes and hypertension, Petitioner receives general assistance-related medical assistance (GA-MA) from DHS pursuant to Section 403.2 of the Human Services Code.[5] *See id.* at 29.

---

Court has described as "a [S]tate-funded program for those who have a physical disability and want to live at home and receive support and services." *PA Home Care Ass'n v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 629 M.D. 2022, filed Oct. 20, 2023), slip op. at 3 n.5.

[2] 42 U.S.C. §§ 12101-12213.

[3] *See* U.S. CONST. amend. XIV; PA. CONST. art. I, § 28.

[4] Section 441.8 imposes as a condition for receiving HCBS the following eligibility requirements: (1) medical eligibility for the payment of nursing facility care or the equivalent level of care in a medical institution; (2) financial eligibility requirements under Federal and State law; and (3) all other eligibility requirements for medical assistance under Federal and State law. Act of June 13, 1967, P.L. 31, No. 21, *as amended*, added by the Act of July 7, 2005, P.L. 177, No. 42, imd. effective, 62 P.S. § 441.8.

[5] Through the GA-MA program, Pennsylvania provides state-funded health insurance to individuals in certain categories who do not qualify for the joint Federal-State medical assistance (MA) program. *Weeks v. Dep't of Hum. Servs.*, 302 A.3d 678, 684 (Pa. 2023). Through Act 12 of 2019, Act of June 28, 2019, P.L. 43, No. 2019-12, the General Assembly ended the general assistance program, which awarded cash benefits to low-income households, but continued the affiliated GA-MA program for the medically needy. That provision is now codified at 62 P.S. § 403.2, added by the Act of June 30, 2012, P.L. 668.

Petitioner applied for HCBS benefits sometime before March 22, 2023, and an independent enrollment broker (Broker) subsequently certified that Petitioner was nursing facility clinically eligible (NFCE). *Id.* at 25. The eligibility form completed by the Broker also indicated that Petitioner was seeking HCBS through the Department's federally funded Community HealthChoices (CHC) waiver. *Id.* at 26. DHS issued a denial of the application on March 22, 2023, explaining only that Petitioner did not have an emergency medical condition. *Id.* at 22.

Following an administrative appeal by Petitioner, a hearing was held before ALJ Black at the BHA's Philadelphia office on June 28, 2023. *See id.* at 58. Petitioner briefly testified through an interpreter that he needed HCBS because of difficulties with using his hands and legs. *Id.* at 87. The loss of function in his limbs, Petitioner explained, meant that he requires assistance with basic tasks such as using the toilet. *Id.* Petitioner added that he is also "almost blind." *Id.*

Appearing for DHS, Sarina Willis, an income maintenance caseworker, explained that Petitioner had been an LPR for less than two years at the time of his application and therefore "subject to [a] five-year bar for receiving federally funded benefits."[6] *Id.* at 77. Accordingly, Ms. Willis explained, Petitioner was found to be eligible for state-funded benefits only, for which an emergency medical condition was required. *Id.* ALJ Black also heard testimony from Dr. Lawrence Appel, the director of DHS's Office of Long-Term Living, who explained that an emergency medical condition is one characterized by "a sudden onset . . . and short course," such as temporary dependence on a ventilator following respiratory failure. *Id.* at

---

[6] It may be presumed that Ms. Willis was referring to the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) of 1996, Pub. L. 104-193, 110 Stat. 2105 (1996). Section 403(a) of PRWORA, now codified at 8 U.S.C. § 1613(a), prohibits States from using federal funds to provide benefits to certain aliens, including LPRs, during their first five years in the United States.

3

89-90. Based on his review of Petitioner's paperwork and testimony, Dr. Appel testified that none of the evidence presented "rise[s] anywhere close to the level of requiring long-term care services regarding . . . emergency medical assistance that the state has set forth." *Id*. at 90.

Following presentation of DHS's evidence, counsel for Petitioner clarified he was not arguing the existence of an emergency medical condition. *Id*. at 93. Rather, Petitioner's counsel argued that he was seeking HCBS benefits on the basis of his NFCE status. *Id*. at 94. While acknowledging that federal law limits federal means-tested public benefits to LPRs who have been present in the United States for at least five years, Petitioner's counsel maintained that the same law "explicitly gives states the discretion to authorize state benefits to qualified aliens."[7] *Id*. at 93. Petitioner's counsel noted that DHS already provides state funds for medical assistance to individuals under the age of 60 pursuant to Act 150. *Id*. at 94. By denying Petitioner's request for HCBS benefits through the imposition of "additional requirements" pertaining to his immigration status, DHS was in violation of the ADA and the Fourteenth Amendment's Equal Protection Clause, his counsel reasoned. *Id*.

In her Order dated July 14, 2023, ALJ Black denied Petitioner's administrative appeal. *Id*. at 35. In the accompanying Adjudication, ALJ Black found as fact that Petitioner applied for HCBS benefits through the CHC waiver only. *Id.* at 38. ALJ Black rejected Petitioner's argument, which, in her characterization, was that HCBS medical assistance administered through the CHC waiver is a state-funded program. *Id.* at 53. As acknowledged by Petitioner's

---

[7] It is undisputed in this case that Petitioner is a "qualified alien" under 8 U.S.C. § 1641(b)(1), which accords that status to all LPRs.

4

counsel during the hearing, federal law "does authorize the states to determine the eligibility for any State public benefits of a qualified alien."[8]  *Id*. at 53 (emphasis in original).  As HCBS under the CHC waiver is "markedly a Federal program administered by Pennsylvania," the Commonwealth must comply with all relevant federal regulations; thus, the five-year federal restriction on means-tested public benefits applied to HCBS benefits as well.  *Id*. at 54.  Since Petitioner lacked an emergency medical condition that would exempt him from that restriction, ALJ Black concluded that DHS properly denied his request for HCBS benefits.  *Id*.  The BHA subsequently affirmed ALJ Black's decision in its July 17, 2023 Final Administrative Action Order.  *Id*. at 34.

In a Petition for Review filed in this Court on August 15, 2023, Petitioner argued, *inter alia*, that HCBS benefits are not restricted to those funded by the federal government and that there are no restrictions under Pennsylvania or Federal law on LPRs who have been residing in the country for less than five years.  Pet. for Rev. ¶¶ 11-12.  Petitioner further maintained that ALJ Black legally erred by failing to address his arguments that DHS's denial violated the ADA and the Equal Protection Clause.[9]  *Id.* ¶ 17.

---

[8] *See* 8 U.S.C. § 1622(a).

[9] Following the ALJ's decision, Petitioner received interim medical assistance from DHS pursuant to 55 Pa. Code § 275.4(d).  Petitioner filed a motion in this Court to extend that interim assistance while his appeal was pending, which was denied by October 2, 2023 Memorandum and Order.

## II. Issues

On appeal,[10] Petitioner presents seven main issues for this Court's consideration.[11] First, Petitioner maintains that ALJ Black erroneously limited her analysis of his HCBS eligibility by focusing entirely on the CHC waiver, neglecting the fact that other forms of HCBS benefits are available. Second, Petitioner argues that he meets all elements of HCBS eligibility set forth by Pennsylvania law, which does not actually consider immigration status as a requirement. Third, Petitioner argues that ALJ Black erred as a matter of law by relying on 55 Pa. Code § 52.3, which only applies to providers rather than applicants, and, moreover, is itself invalid as it unreasonably and unlawfully restricts access to HCBS benefits. Fourth, Petitioner maintains that DHS's denial violates the ADA because it restricts available LTC services to those available in an institutional nursing facility. Fifth, Petitioner argues that DHS's action further violates the ADA because HCBS benefits would be available if he were under the age of 60. Sixth, Petitioner maintains that DHS's action runs afoul of the United States Supreme Court's decision in *Graham v. Richardson*, 403 U.S. 365, 372 (1971), which holds that state laws drawing distinctions between aliens and citizens for purposes of who can receive public benefits are "inherently suspect and subject to close judicial scrutiny." Seventh, Petitioner argues that the denial of his access to HCBS benefits on the basis of his age violates the United States and Pennsylvania Constitution's guarantees of equal protection.

---

[10] This Court's standard of review is limited to determining whether the BHA's adjudication is supported by substantial evidence, whether the decision is in accordance with applicable law, or whether constitutional rights have been violated. *L.H. v. Dep't of Hum. Servs.*, 197 A.3d 310, 312 n.4 (Pa. Cmwlth. 2018).

[11] We have reordered some of Petitioner's appeal arguments for clarity and ease of disposition.

## III. Discussion

The Commonwealth's MA program is authorized by Article IV of the Human Services Code (formerly the Public Welfare Code), Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 401-493. Individuals who are "categorically needy" or "medically needy," two standards of eligibility established by DHS, are both eligible for MA. *See* Sections 441.1 and 442.1 of the Human Services Code, 62 P.S. §§ 441.1, 442.1,[12] and 55 Pa. Code §§ 141.81, 171.81. While Pennsylvania is required to provide assistance to the categorically needy as a condition of its participation in Medicaid, its assistance to the broader medically needy category is voluntary. *Lewis v. Alexander*, 685 F.3d 325, 332 (3d Cir. 2012). The medically needy category includes individuals aged 59 and over who meet the "standards of financial and nonfinancial eligibility" as defined by DHS. 62 P.S. § 442.1(a)(2) & (3)(ii)(C).

HCBS as a concept traces its origins to the 1981 addition of Section 1915(c) to the Social Security Act,[13] which enabled states to provide HCBS for some targeted groups of individuals who would otherwise require institutional care through the waiver of ordinary Medicaid rules. Jacob Abudaram, *Deinstitutionalization, Disease, and the HCBS Crisis*, 122 MICH. L. REV. 419, 432 (2023). The services could include nonmedical services that would prevent institutionalization. *Id.* In 1986, Pennsylvania expanded the provision of HCBS through the passage of Act 150 to include certain physically disabled individuals between the ages of 18 and 59. Unlike HCBS benefits offered through Medicaid waivers, those offered through Act

---

[12] Sections 441.1 and 442.1 were added by the Act of July 31, 1968, P.L. 904.

[13] *See* Omnibus Reconciliation Act of 1981, Pub. L. No. 97-35, § 2176, 95 Stat. 357 (1981) (codified as amended at 42 U.S.C. § 1396n(c) (1994)).

150 are State-funded. Later, through the passage of Act 42 in 2005,[14] the General Assembly added Section 441.8 to Chapter IV of the Human Services Code,[15] which provides:

> As a condition of eligibility for [HCBS], an applicant shall be subject to all medical and financial eligibility requirements for medical assistance including:
>
> (1) Medical eligibility for the payment of nursing facility care or the equivalent level of care in a medical institution.
>
> (2) Financial eligibility requirements under Federal and State law, including the provisions of sections 1917 and 1924 of the Social Security Act (49 Stat. 620, 42 U.S.C. §§ 1396p and 1396r-5).
>
> (3) All other eligibility requirements for medical assistance under Federal and State law.

62 P.S. § 441.8.

Instantly, Petitioner's wide-ranging Brief contains a multitude of arguments to support the contention that he is eligible for HCBS services. First, Petitioner argues that ALJ Black erred by placing her focus entirely on his purported eligibility for HCBS under the Federally-funded CHC waiver. Petitioner asserts that "he has made no request for enrollment in CHC specifically" and has never even "assert[ed] a right to CHC enrollment"; yet, ALJ Black framed the issue before her as "whether [DHS] was correct to deny HCBS/MA under the CHC [w]aiver due to citizenship requirements as cited on the September 16, 2022 notice." Petitioner's Br. at 23-24; C.R. at 52. Additionally, by "converting [Petitioner's] request for HCBS to a request for 'HCBS under the CHC waiver' and limiting the analysis of his HCBS eligibility"

---

[14] Act of July 7, 2005, P.L. 177, No. 42, imd. effective.
[15] The Human Services Code was then known as the Public Welfare Code.

8

for that waiver, Petitioner reasons, ALJ Black employed a "more restrictive eligibility standard" than the one actually set forth in the Human Services Code. *Id.*

We agree with Petitioner. ALJ Black's factual finding that Petitioner "applied for HCBS/MA under the CHC [w]aiver," C.R. at 52, is unexplained but appears to refer inaccurately to the NFCE eligibility form completed by Petitioner's Broker. *See id.* at 26. That document is not Petitioner's initial application for HCBS, which does not appear in the record that DHS has submitted to this Court. It does not even appear to be DHS's contention on appeal that Petitioner sought HCBS benefits pursuant to the CHC waiver only. *See* DHS's Br. at 10 (relating that Petitioner "applied for both [GA-MA] and [HCBS]"). Since ALJ Black's factual conclusion is lacking in adequate foundation, we conclude that Petitioner's eligibility for HCBS should have been considered within the broader aegis of MA services.

Petitioner next argues that he meets all relevant eligibility requirements imposed by State and Federal law for HCBS. Pointing to the plain language of Section 441.8 of the Human Services Code, Petitioner reasons that the legislature "set[] a broad HCBS eligibility standard . . . which does not condition HCBS eligibility on meeting [F]ederal waiver eligibility requirements"; indeed, Petitioner notes that Section 441.8 "does not mention [F]ederal waiver programs at all." *Id.* at 26. Petitioner contrasts Section 441.8 with other nearby provisions, such as Sections 441.7 and 441.5, both added by the Act of July 7, 2005, P.L. 177, 62 P.S. §§ 441.7 & 441.5, which expressly identify Federal waiver programs in their requirements for eligibility.[16] Thus, Petitioner argues that the legislature intended to make HCBS

---

[16] *See* 62 P.S. § 441.5(a) (directing DHS to impose a penalty of ineligibility when an applicant or recipient, or spouse of an applicant or recipient, makes certain asset transfers, pursuant to 42 U.S.C. § 1396p(c)); *id.*, § 441.7 (imposing the terms by which the spouse of a Medicaid applicant may transfer resources to his or her spouse while remaining eligible, pursuant to 42 U.S.C. § 1396).

9

available as a part of his GA-MA enrollment, which "is *both* a benefit provided to him by a [S]tate agency, DHS, *and* a benefit that is provided using [S]tate funds." Petitioner's Br. at 13 (emphasis in original). Since States are authorized under 8 U.S.C. § 1622(a) "to determine the eligibility for any State public benefits of [a qualified alien]," Petitioner reasons that Federal law is no bar to his receipt of HCBS benefits. *Id.* at 12.

On this point, too, Petitioner is persuasive. Section 441.8 is situated within Article IV of the Human Services Code, which governs Pennsylvania's entire MA program; this includes services that receive Medicaid funding and some that are primarily or entirely state-funded. There are numerous instances where the General Assembly has, through clear language, tied specific goods or services to Federal participation.[17] We thus presume that, had the General Assembly intended to restrict HCBS benefits to beneficiaries of Medicaid and Act 150 only, it could have easily added phrasing to that effect.[18] As it is written, Section 441.8's conditions include (1) medical eligibility for nursing facility care, (2) financial eligibility under relevant Federal or State law, and (3) the satisfaction of other eligibility requirements under

---

[17] In addition to the examples furnished by Petitioner, another is Section 443.13, added by the Act of October 23, 2023, P.L. 63, 62 P.S. § 443.13 (providing that "sufficient funds shall be included to provide reimbursement" for ambulance mileage, at published Medicaid and Medicare rates, "[s]ubject to Federal approval as may be necessary and contingent on Federal financial participation").

[18] We also acknowledge that Section 441.8(b) includes a reference to "[S]ections 1917 and 1924 of the Social Security Act (49 Stat. 620, 42 U.S.C. §§ 1396p and 1396r-5)." 62 P.S. § 441.8(b). While both provisions are contained within Title XIX, their inclusion does not impose Medicaid eligibility *per se* but only explains how DHS is to calculate financial eligibility. 42 U.S.C. § 1396p is, in the words of the United States Supreme Court, "the Medicaid Act's anti-lien provision, which prohibits States from recovering medical payments from a beneficiary's property." *Gallardo By & Through Vassallo v. Marstiller*, 596 U.S. 420, 421 (2022) (cleaned up). Meanwhile, 42 U.S.C. § 1396r governs how the income of a "community" (i.e., non-institutionalized) spouse factors into the financial eligibility of an institutionalized spouse. *See Weatherbee ex rel. Vecchio v. Richman*, 595 F. Supp. 607, 611 (W.D. Pa. 2009).

10

Federal or State law for the MA program—*not* Medicaid.  62 P.S. § 441.8(1)-(3).

Petitioner is a GA-MA recipient who is medically eligible for nursing facility care, and who is financially and legally eligible for MA under both state and federal law; he thus satisfies all three of Section 441.8's conditions.  Accordingly, we hold that he and similarly situated persons are eligible for HCBS so that they, too, may avoid institutionalization and receive necessary care while remaining in their homes.  We observe that this conclusion is not only consistent with Section 441.8's plain language but with the overarching legislative intent of Article IV, which is "to promote the self-sufficiency of all the people of the Commonwealth."  62 P.S. § 401(a).

Lastly, Petitioner objects to ALJ Black's reliance on 55 Pa. Code § 52.3, which provides that HCBS includes "[s]ervices offered as part of a [federally ]approved MA waiver or Act 150 program."  Petitioner argues that the regulation in question "applies only to *providers* of [HCBS]" under 55 Pa. Code § 52.2 (providing that "[t]his chapter sets forth the regulations which apply to providers applying to participate and render MA-funded [HCBS]").  Petitioner's Br. at 57.  Regardless of the regulation's scope, Petitioner argues that 55 Pa. Code § 52.3's definition of HCBS is unduly restrictive and at odds with DHS's enabling legislation.  Petitioner thus reasons that 55 Pa. Code § 52.3 fails the test of an agency regulation set forth in *Bucks County Services, Inc. v. Philadelphia Parking Authority*, 195 A.3d 218, 237 (Pa. 2018): specifically, that the regulation must be "(1) within the agency's granted power; (2) issued pursuant to proper procedure; and (3) reasonable."

On this last point, Petitioner is, again, more persuasive.  55 Pa. Code § 52.3's definition of HCBS is without foundation in Section 441.8, which mentions neither

Federal Medicaid waivers nor Act 150.  We conclude that the regulatory definition exceeds DHS's granted powers and is unreasonable, and, therefore, invalid.

Having concluded that Section 441.8 of the Human Services Code, 62 P.S. § 441.8, is dispositive in this case, we need not address Petitioner's remaining issues.

## IV.  Conclusion

For the foregoing reasons, we reverse the BHA's Final Order.


_____
MATTHEW S. WOLF, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Maximo Zapata                             :
                    Petitioner            :
                                          :
         v.                               :    No.  880 C.D. 2023
                                          :
Department of Human Services,             :
                    Respondent            :

# **O R D E R**

AND NOW, this 30th day of June 2025, the Final Administrative Action Order of the Department of Human Services, Bureau of Hearings and Appeals in the above-captioned matter, dated July 17, 2023, is hereby REVERSED.  The definition of "HCBS" set forth at 55 Pa. Code § 52.3 is declared to be NULL AND VOID.

_____
MATTHEW S. WOLF, Judge